[No. 26483. Department Two. February 9, 1937.]

LULU B. MILLER, *Appellant,* v. THE PENN MUTUAL LIFE INSURANCE COMPANY OF PHILADELPHIA, *Respondent.*[1]

[1]Reported in 64 P. (2d) 1050.

*Gordon & Gordon,* for appellant.

*Hartman & Hartman,* for respondent.

HOLCOMB, J.—In 1908, the husband of appellant, hereinafter called the insured, applied to respondent for a ten-year term life insurance policy, payable to appellant, as beneficiary, in twenty annual installments of five hundred dollars each. Respondent tendered its policy to the insured, which included the insurance contract applied for, hereinafter termed the principal contract, and, in addition, a contract for insurance of a different type, in the form of a rider attached thereto, hereinafter called the rider, providing for additional insurance payable in installments of five hundred dollars annually for the life of appellant after the payment of the twenty installments certain under the principal contract. The insured accepted the policy, consisting of the principal contract and the rider, and paid all annual premiums due thereon within the grace period of thirty-one days, for six years. He failed to pay the premium falling due on June 17, 1914, within the grace period, or at all. He died on August 14, 1914.

The insurance provided in the principal contract was ten-year term insurance payable in twenty annual installments of five hundred dollars each, for which the annual premium was $106.40. The level premium charged therefor produced a surplus during the early years of the policy and a cash value which was applied under clause VII of the policy, the nonforfeiture clause, in the absence of an election by the insured under the first option providing for the automatic extension of the net amount of the policy as non-participating term insurance, the extended term being for ninety-seven days to September 22, 1914.

The insured died during the extended term, and re-

spondent has paid the twenty payments provided for under the principal contract. It denied liability under the rider, and this suit was brought by appellant to recover installments claimed by her to be due under the rider.

The material portions of the policy in controversy are:

"The extended insurance, paid-up insurance, and cash surrender value privileges, benefits, and conditions stated on the second and third pages hereof form a part of this policy as fully as though recited at length over the signatures hereto affixed. . . .

"VII. Non-Forfeiture. If this policy shall lapse through non-payment of premium after three years' premiums have been paid in cash, the company, subject to the other conditions of the policy, guarantees at the end of successive policy years the following options of settlement:

"First:—The automatic extension of the net amount insured by this policy as non-participating term insurance payable in instalments for the number of years and days stated below, at the expiration of which time the insurance shall cease; or,

"Second:—Paid-up non-participating term insurance, payable at death occurring within ten years of the date of issue of this policy, upon written application therefor and the legal surrender of all claims hereunder to the company at its Home Office within one month after lapse. The amount of such paid-up term insurance is provided for in the table below. No paid-up value will be allowed for an amount less than $50, but the cash value stipulated in the third option will be paid; or,

"Third:—The payment of the cash surrender value provided for in the table below on surrender of the policy and all claims hereunder to the company within one month after the date of lapse."

The succeeding paragraph sets forth a table of extension, paid-up term and cash values provided for by the policy, which table showed that, at the end

of the sixth year, the term of extension of the policy was ninety-seven days, the paid-up term insurance on surrender of the policy fifty dollars per one thousand dollars, and the cash surrender value $2.09 per one thousand dollars.

The rider attached to the policy reads:

"The Penn Mutual Life Insurance Company, in addition to the provisions and privileges contained in its policy No. 410424 on the life of Frank S. Miller to which this agreement is attached, in consideration of the payment to said company for life of the extra annual premium of Twenty One 60/100 Dollars already included in the annual premium of $128 now named in and payable in accordance with the terms and conditions of the policy, hereby further promises and agrees, subject to the other conditions and provisions thereof, that should Lulu B. Miller, the beneficiary thereunder live to receive the Twenty yearly instalments of $500 each as payable to her by the terms thereof, it will continue to pay to said beneficiary annually thereafter the said yearly instalment sum of Five Hundred Dollars during the remainder of her natural life.

"It is mutally understood and agreed that the dividends, loan and surrender values payable or allowed under said policy shall be the same as if this supplemental agreement had not been made; and that any default in premium payments on said policy, or any over-statement in the application for it or for this agreement as to the age of said beneficiary, shall render this agreement null and void.

"It is also agreed that the company will cancel this agreement upon written application from the insured and the return of said policy and this agreement to the Home Office for that purpose, and the yearly premium on the policy will thereafter be reduced to the ordinary rate.

"This continuous Installment contract can not be transferred to apply to any other life."

Respondent admitted the allegations of appellant's complaint as to the contract and the death of appel-

lant's husband, the nonpayment of the premium due June 17, 1914, and that it had not been paid when appellant's husband died. It denied liability on the ground that the rider constituted a second and separate contract between the parties and was void by reason of nonpayment of the premium.

Appellant sued for one of the five hundred dollar annual installments and later amended its complaint to sue for two installments amounting to one thousand dollars due at the time of the trial. After a trial to the court without a jury, the trial judge held in favor of respondent and, among other things, said:

"The main policy with its provisions is complete in itself; simply attached to, but not made a part of, the policy is the rider containing another and an additional agreement; the phraseology of the rider expresses this when it says:

"'The Penn Mutual Life Insurance Company, in addition to the provisions and privileges contained in its policy No. 410424, on the life of Frank S. Miller . . .'

agrees for a certain consideration to do a certain thing.

"In the policy itself the insurance company promises to pay Lulu B. Miller the principal sum of $10,000, payable in twenty yearly installments of $500 each. Then this other and further agreement was made, in consideration of the payment for life of an extra annual premium of $21, that if Mrs. Miller lived to receive the twenty yearly installments, it would continue to pay her annually thereafter, $500 yearly during the remainder of her natural life.

The policy is dated June 17, 1908. Frank D. Miller died August 14, 1914, at which date the annual premium of $128, payable on or before the 17th of June, 1914, remained unpaid. Because this death occurred within 97 days, the term of extension for the policy under the table contained therein, the insurance company applied the surrender value of the policy to the purchase of automatic extended insurance, and did

continue to pay Mrs. Miller $500 yearly for twenty years.

"Under the testimony the premium on the main policy would be $106.40 per year. The attached rider called for $21.60 additional and refers to it as included in the $128 premium mentioned in the policy, the $128 being the total premium. The policy and its rider were accepted by Mr. Miller, who paid the $128 for five years, although he could have refused the rider and kept only the policy at a cost of $106.40, under which the dividends, loan and surrender value would be the same as if the supplemental agreement had not been made.

"Now this supplemental agreement contains certain provisions which are controlling both because they are expressed in it and therefore superior, and because some are involved in plaintiff's claim, but which differ from some of the provisions of the policy proper. This difference would emphasize the fact that they are distinct contracts. For instance, in the policy itself the right is reserved to change the beneficiary, while under the provisions of the rider the contract for continued installments cannot be transferred to any other life.

"Then there is this provision, important to this case, that any default in the premium payments shall render the agreement null and void. That there was a default in that the premium due June 17, 1914, had not been paid, is undisputed, in fact, plaintiff pleads that at the time of Mr. Miller's death, August 14, 1914, this premium had not been paid.

"If it thus became dead it remained dead, for I find in it no formula for restoring it to life against the will of the company. Of course the company could make another arrangement, or agreement but it did not. Any accumulated values were only applicable to, and were applied to keeping the main policy in force, thus securing to Mrs. Miller the $10,000 paid to her and were not attributable to the insurance rider. The policy lapsed and there was no reinstatement.

"Under the conditions shown it is my opinion that the plaintiff is not entitled to judgment for recovery

upon the supplemental agreement, and the defendant may take a judgment of dismissal.''

No facts are in dispute.

As the sole error assigned by appellant is in failing to find in her favor for the sum of one thousand dollars, with interest since the claimed due dates, and in entering judgment dismissing her action, the one question to determine is, Was the rider void or in force when the insured died?

Appellant vigorously contends that the insurance contract is ambiguous, but constitutes an entire and single contract, and as such should be construed most favorably in favor of the insured, citing *Starr v. Aetna Life Ins. Co.*, 41 Wash. 199, 83 Pac. 113, 4 L. R. A. (N. S.) 636; *Algoe v. Pacific Mutual Life Ins. Co.*, 91 Wash. 324, 157 Pac. 993, L. R. A. 1917A, 1237; *Guaranty Trust Co. v. Continental Life Ins. Co.*, 159 Wash. 683, 294 Pac. 585; *Brown v. Northwestern Mutual Fire Association*, 176 Wash. 693, 30 P. (2d) 640; *Braley Motor Co. v. Northwest Casualty Co.*, 184 Wash. 47, 49 P. (2d) 911; Restatement of the Law of Contracts, § 236; 32 C. J. 1152-1156, and 1303.

The rule that the contract will be construed most favorably to the insured will be applied only when there is an unexplained ambiguity in the language of the contract. It is well settled that all parts of an insurance policy must, if possible, be harmonized and given effect. *Aetna Ins. Co. v. Sacramento-Stockton S. S. Co.*, 273 Fed. 55; 2 Cooley's Briefs on Insurance (2d ed.), 999.

The liability of respondent is fixed by the terms of the contract, and its terms, if plain and free from ambiguity, must control. *Puget Sound Improvement Co. v. Frankfort Marine, Accident & Plate Glass Ins. Co.*, 52 Wash. 124, 100 Pac. 190.

In thus construing the policy we are not unmindful of the rule that policies are construed in favor of the insured and most strongly against the insurer, as held in *Starr v. Aetna. Life Ins. Co., supra,* but this rule should not be permitted to have the effect to make a plain agreement ambiguous and then interpret it in favor of an insured. *Green v. National Casualty Co.,* 87 Wash. 237, 151 Pac. 509, and cases cited.

■ An insurance company has the right to determine for itself whom it will insure and what interest it will insure, and to provide that any change in such interest without its consent will work a forfeiture of the policy. *Menger v. Inland Empire Farmers' Mutual Fire Ins. Co.,* 118 Wash. 514, 203 Pac. 934. To the same effect is *Maryland Casualty Co. v. Industrial Accident Commission,* 209 Cal. 394, 287 Pac. 468; 1 Couch, Cyclopedia of Insurance Law, § 184; 2 Cooley's Briefs on Insurance (2d ed.), 1012.

■■ Conceding, *arguendo,* that there is an inconsistency within this policy between the body of the policy and the rider, the rider would prevail.

The rider provides essentially that other and additional insurance was accepted by the insured for additional premiums, and also provided that, in case they were not paid within the grace period after the due date, that the contract was forfeited. It is undisputed that the premium was not paid when due or within thirty-one days and had not been paid when the insured died.

Provisions may be incorporated in insurance policies by slips or riders, which will be construed with the printed provisions of the policy, but, if there is an irreconcilable conflict, the slip or rider will prevail. *Corporation of Roman Catholic Church v. Royal Ins. Co.,* 158 La. 601, 104 So. 383. (To the same effect,

*Mixon v. St. Paul Fire & Marine Ins. Co.*, 147 La. 302, 84 So. 790.)

Unless the rider on the insurance policy is irreconcilable with the printed clause, such clause must stand; but if it is inconsistent and irreconcilable, the rider will control. *Aetna Ins. Co. v. Sacramento-Stockton S. S. Co., supra.* To the same effect are *Aetna Ins. Co. v. Houston Oil & Transport Co.*, 49 F. (2d) 121; *Ducommun v. Inter-State Exchange*, 193 Wis. 179, 212 N. W. 289, 214 N. W. 616; *Jackson v. British America Assurance Co.*, 106 Mich. 47, 63 N. W. 899, 30 L. R. A. 636. See, also, 1 Couch, Cyclopedia of Insurance Law, § 159; Richards, Law of Insurance (4th ed.), 110; 32 C. J. 1159; 14 R. C. L. 934; Restatement of Law of Contracts, § 236.

Consequently, we conclude that the trial judge was correct in his reasoning and conclusion.

It is not necessary to consider a proper definition of the word "lapse" as discussed by appellant. Manifestly, the policy lapsed when the premium was not paid within the grace period and could only be reinstated as provided in the policy. By its terms, the rider became void, and under the conditions of the principal contract the extended term insurance for ninety-seven days came into being.

The judgment is affirmed.

STEINERT, C. J., BLAKE, and ROBINSON, JJ., concur.

TOLMAN, J., dissents.