[No. 27029.  *En Banc.*  October 5, 1938.]

EDA M. GOODWIN, *Respondent,* v. THE NORTHWESTERN
MUTUAL LIFE INSURANCE COMPANY, *Appellant.*[1]

[1]Reported in 83 P. (2d) 231.

*Allen, Froude & Hilen,* for appellant.

*Koenigsberg & Sanford,* for respondent.

*Bundy & Swale, Wright, Jones & Bronson, Kerr, McCord & Carey, Bogle, Bogle & Gates,* and *Evans, McLaren & Littell, amici curiae.*

BEALS, J.—The late Erwin S. Goodwin, May 16, 1906, received from defendant, The Northwestern Mutual Life Insurance Company (a mutual company authorized to write insurance in the state of Washington), two ten year convertible term policies upon his life, each in the principal sum of $2,500, payable to the plaintiff, Eda M. Goodwin, his wife. The insured, for a specified period, had the right to convert the policies into ordinary life insurance, and May 24, 1916, received from defendant two ordinary life policies, each in the principal sum of $2,500, paying therefor the sum of $889.02. These latter policies contained the following loan provision:

"If this policy be not then extended as term insurance, the company will grant a loan in accordance

with the table below, at not to exceed six per cent annual interest, upon a satisfactory assignment of the policy as collateral security, and subject to the regulations of the company then in force relating to policy loans."

June 6, 1916, Mr. Goodwin, desiring to realize upon his policies, signed an agreement, which was written upon a form similar to the following:

"THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY

"$.............................

"IN CONSIDERATION of the loan to the undersigned by The Northwestern Mutual Life Insurance Company on its Policy No............ of the sum of ....................................... Dollars, payable at its office in the city of Milwaukee, Wisconsin, with interest at the rate of six per cent. per annum, payable annually, and as security for the payment of the same, both principal and interest, the undersigned do...... hereby assign and set over to said The Northwestern Mutual Life Insurance Company at Milwaukee, Wisconsin, said policy issued on the life of the undersigned ................................................................................ and all dividend additions thereto.

"In case of the non-payment of any interest on said loan when due, such interest shall be added to and become a part of the principal of said loan and shall bear interest at the rate aforesaid. If and whenever on any day the amount of such principal together with the interest accruing upon the same shall equal the then cash surrender value of the said policy and dividend additions thereto, if any, the said policy and dividend additions shall thereupon become void without action on the part of said company and be deemed surrendered in consideration of the cancellation of said loan.

"If said policy shall become paid-up insurance, said loan will be continued under the terms hereinbefore provided, but if said policy shall become extended term insurance, the existing indebtedness under said loan shall be adjusted as provided in said policy.

"This assignment may be terminated at any time

upon payment in cash of the principal and interest of said loan.

"Payment of this loan, or of any part not less than twenty (20) dollars, may be made at any time.

"In Witness Whereof, the undersigned ha........ executed these presents the ........... day of ................................................, A. D. 19............. ................................................................................ (Seal)
(Insured)"

At the same time, Mr. Goodwin delivered to defendant, as collateral security for the payment of the advances, the two policies of insurance above referred to, receiving in cash the sum of $388 on each advance. The insured paid the interest installments which fell due up to and including June 6, 1918, but thereafter paid no interest, and defendant each year added the unpaid interest to the principal, and thereafter charged six per cent interest per annum on the total amount, thereby compounding the interest annually.

June 27, 1921, the insured procured a further advance on each policy in the sum of $146.30, signing an agreement substantially in the same form as that which he had executed previously. By this agreement, each advance was in the sum of $610, which included the amount originally advanced, unpaid interest compounded annually, and the additional sum received by the insured.

No payments of principal or interest were made upon these loans, and on October 11, 1928, the insured requested an additional advance, signing two loan agreements acknowledging an indebtedness against each policy in the sum of $955, receiving, in cash, $21.80. These loan agreements were similar in form to the others.

Thereafter, Mr. Goodwin made two payments on each of the advances, and March 30, 1934, signed a new loan agreement on each policy, each in the sum

of $1,195, the principal being computed in the same manner as the former principals, the insured receiving $22.60 on each policy. This last loan agreement contained the following provision for the compounding of interest:

"In case of the non-payment of any interest due as above provided such interest shall be added to and become a part of the principal sum and shall bear interest at the rate aforesaid."

Mr. Goodwin having made no payments either upon the loan agreements or by way of premiums, during the month of September, 1935, defendant, pursuant to the terms of the policies, converted them into paid-up policies, each in the principal sum of $1,806. A few months thereafter, the insured having made no payments by way of interest on the loan agreements, defendant, March 14, 1936, gave him notice to the effect that the amount due defendant thereunder, according to defendant's figures, exceeded the cash value of the insurance policies, and that the policies would be canceled. The policies were accordingly terminated and canceled. At this time, the cash surrender value of each policy was $1,322.67, and according to defendant's computation, there was due against each policy, under the agreements above referred to, $1,339.28. Upon each advance, the insured had received, in cash, $578.26. Six per cent interest upon the money actually received, computed each year but not compounded, amounted to something less than $450, in all a little over $1,000 against each policy, leaving a margin of cash surrender value on each policy, if the interest were not compounded, of something over $300.

During the month of September, 1936, Mr. Goodwin brought suit against defendant, asking for the reinstatement of each policy. During the pendency of the

action, Mr. Goodwin died, and his widow, Eda M. Goodwin, was substituted as party plaintiff herein, and the action continued upon the policies, which plaintiff alleged had been illegally canceled. The action was tried to the court, sitting without a jury, and resulted in a judgment awarding plaintiff $759.80 on each policy. From this judgment, defendant has appealed.

Error is assigned upon the refusal of the trial court to receive certain evidence; upon the making of two findings of fact and one conclusion of law; and also upon the entry of judgment in plaintiff's favor.

In 1911, the legislature enacted an insurance code (Laws 1911, chapter 49, p. 161). The opening paragraph of § 184, p. 261, of this act and subd. 7, p. 262, thereof (Rem. Rev. Stat., § 7230 [P. C. § 3128]) read as follows:

"No life insurance policy, except policies of industrial insurance or where the premiums are payable monthly or oftener, shall be issued or delivered in this state on and after January first, nineteen hundred and twelve, unless it contains in substance the following provisions: . . .

" (7) A provision that after the policy has been in force for three full years, the company at any time, while the policy is in force, will advance, on proper assignment or pledge of the policy and on the sole security thereof, at a specified rate of interest not exceeding six per centum per annum, a sum equal to, or at the option of the owner of the policy less than, ninety per centum of the reserve at the end of the current policy year on the policy and on any dividend additions thereto, less a sum not more than two and one-half per centum of the amount insured by the policy and of any dividend additions thereto; and that the company will deduct from such loan value any existing indebtedness on the policy and any unpaid balance of the premium for the current policy year and may collect interest in advance on the loan to

the end of the current policy year; which provision may further provide that such loan may be deferred for not exceeding six months after the application therefor is made."

The section refers to the money which the policyholder is entitled to receive as an "advance," and as such an advance is made on the sole security of the policy, no personal obligation to return the money exists, and the duty to repay, which at least usually arises in case of a loan, is absent. The remedy of the insurer is limited to the policy itself, and cancellation or forfeiture thereof.

The only question here to be determined is whether or not appellant had the right to each year add to the principal of the advance the accrued interest, and the next year compute interest upon the new total.

By the terms of the statute above set forth, the advance made to the policyholder should bear interest "not exceeding six per centum per annum," and by the provision of the policy above quoted, appellant agreed to loan the policyholder money according to a schedule, which was made part of the policy, "at not to exceed six per cent annual interest," upon "a satisfactory assignment of the policy as collateral security, and subject to the regulations of the company then in force relating to policy loans." It appears that appellant's regulations in force at the time Mr. Goodwin received the advances above referred to provided that all interest upon policy advances should be compounded, in the event of the failure of the policyholder to pay the interest annually, as it matured.

As above noted, appellant is a mutual insurance company. Its board of trustees are elected by the policyholders and represent them in the management of the corporation.

Appellant contends that, under the law applicable,

the policies which it issued to Mr. Goodwin, and its regulations, it was entitled to charge compound interest upon the advances which it made. Respondent, on the other hand, contends that appellant was entitled to no more than simple interest, and was not entitled to charge interest upon interest. Respondent relies upon the opinion of this court in the case of *Stauffer v. Northwestern Mutual Life Ins. Co.,* 184 Wash. 431, 51 P. (2d) 390. In the case cited, the plaintiff sought to recover judgment against the defendant (which, it happens, is also the appellant in the case at bar, represented by the same counsel in each case) upon a life insurance policy issued to her deceased husband, Joseph E. Stauffer. The policy contained the same loan provision above quoted, and Mr. Stauffer had received on his policy from the insurer an advance in the sum of $1,280, signing a loan agreement providing for compound interest in case of nonpayment of the annual interest when due. Mr. Stauffer paid no interest on his advance, and the insurer each year added the interest to the principal and thereafter computed interest upon the total at six per cent per annum.

Upon Mr. Stauffer's death, the insurer deducted from the face of the policy the principal of the advance, plus interest compounded annually, and tendered the balance to the widow. She refused to accept the amount tendered, claiming that the insurer was entitled to charge no more than simple interest, and brought suit upon the policy. The insurer tendered the amount which it admitted to be due, and demurred to the plaintiff's complaint. Plaintiff refused to accept the amount tendered and elected to stand upon her complaint. The defendant insurance company moved for judgment upon the pleadings, and the trial court, being of the opinion that the complaint failed

to state a cause of action for any sum in excess of the amount tendered, awarded the plaintiff judgment for that amount only, from which judgment the plaintiff appealed, contending that upon the pleadings she was entitled to judgment for the larger sum.

The case was argued to this court sitting *En Banc,* and the judgment of the trial court was reversed, with directions to the trial court to proceed with the action. It was held that, under the terms of the contract of insurance, there was no agreement or obligation on the part of the insured to pay compound interest upon advances, if any should be made. The court noted that the first suggestion of any obligation to pay compound interest appears in the subsequent note and agreement, and that this agreement modified the original terms of the policy. The court called attention to the rule that an executed contract cannot subsequently be modified, save by an agreement supported by a new consideration, and that the insurance company could not, after the issuance of the policy, impose upon the policyholder who should seek an advance on his policy any additional burden, unless based upon some moving consideration therefor. In its preliminary discussion of the case, this court said:

"For the purpose of the argument, we shall assume, as respondent contends, that the words 'at not to exceed six per cent annual interest,' contained in the provision of the policy above quoted, mean interest, at a rate not to exceed six per cent per annum, *payable annually.* Upon that construction of the policy, the insured was entitled to a loan of $1,280, upon which he would have been required to pay the interest annually. He would not, however, have been required to pay more than simple interest on the loan. Had the loan then been made according to the terms of the policy, the company would have had the right to bring suit for the interest when due, if unpaid, but that would have been its only right, at least until

such time as the indebtedness on the loan equalled or exceeded the loan value or cash value of the policy."

Our attention was not called to the provisions of the statute above quoted, to the effect that the policy itself should stand as the sole security for the advance; indeed, counsel for the insurance company (the respondent in the case cited, and the appellant in the case at bar), in the brief which they filed, took the position that, "in the absence of an agreement to the contrary, respondent would have been entitled to sue the insured at the end of each year to collect such interest," and contended that the parties could by some agreement protect the loan against being placed in default for nonpayment of the interest annually.

In the course of the opinion, we said:

"Mr. Stauffer, having paid the premiums for seven consecutive years, was entitled by the original terms of the policy to a loan at a rate of interest not to exceed six per cent per annum, payable annually. Having performed his part of the contract, he was entitled to have respondent perform its part. The respondent could not thereafter impose an additional burden upon the borrower without some moving consideration therefor."

The question of any possible consideration for the promise to pay compound interest was then discussed. The opinion continues:

"The only consideration that is suggested in the briefs, or that could be suggested, is that, by the terms of the subsequent agreement, Mr. Stauffer was relieved of the obligation to pay the interest annually and was given the option of having the interest added to, and becoming a part of, the principal."

It was held that the consideration suggested was, in fact, no consideration at all, and that the agreement to pay compound interest was consequently void.

In the case at bar, appellant departs from the position which it assumed in the *Stauffer* case as to the right of the insurer to sue, and contends that it has no right to sue, but that, under the statute and the contract of insurance, it is entitled to charge compound interest on the money which it advanced to the insured. In the *Stauffer* case, the insurance company argued that there was nothing in the contract of insurance which purported to provide for what should happen if the insured failed to pay the interest upon his advance annually; and that, as the contract was wholly silent upon this point, the parties were left free to contract as to the legal liability of the insured for failure to pay the interest; and that, upon this phase of the transaction, the contract of the parties was contained in the so-called loan agreement. This argument the court disposed of by holding that there was no consideration for any promise on the part of the insured, contained in the loan agreement, to pay compound interest.

By a contract of insurance similar to that here in question, the policy, after having remained in force for a certain specified period, acquires a cash surrender value, which increases as premiums are paid. This is a value which belongs to the insured, and which he can receive on demand, subject to the terms of the policy. If he does not desire to surrender the policy and receive its cash value, he may receive advances to be charged against either the cash surrender value of the policy or the value thereof in case the policy should mature by reason of the death of the insured. Money advanced by an insurer to the insured, under the circumstances disclosed by the record in the case at bar, is not a loan, in the ordinary sense of the word. It is a delivery to the insured of a portion of the sum which represents the then cash surrender value of

the policy, which value the insured may receive on demand and surrender of the policy. Under the statute, no liability for the sum advanced may be enforced against the insured, the insurer's remedy being limited to proceedings against the policy. The transaction is more accurately described as an advance than as a loan, the word advanced being used by the statute to describe the transaction. As held by this court in the *Stauffer* case, the rights of the parties are fixed by the contract of insurance and the applicable statutes.

Upon the record in the *Stauffer* case, it was admitted that the insurance company, at the time of the issuance of the policy, had not adopted any regulation providing for the charge of more than simple interest. Referring to the payment of interest in the case cited, we had this to say:

"Under the original terms of the contract of insurance, there was no agreement or obligation on the part of the insured to pay compound interest, there must be a direct promise to do so, and it is not enough that the note or contract merely provide for *annual payment* of interest. *Cullen v. Whitham,* 33 Wash. 366, 74 Pac. 581; *Lacey & Co. v. McCarthy,* 168 Wash. 579, 13 P. (2d) 11."

The two cases cited amply support the rule laid down.

■ The law has much concerned itself with the matter of compounding interest. The underlying principle is well stated in Perley's Principles of the Law of Interest, p. 157, as follows:

"Compound interest is interest upon interest; and, even in contracts for interest, it will generally not be allowed, as it is not favored. It is upon principles of justice alone that promises are ever implied or duties raised in law. Chancellor Kent said that chancery declares compound interest to be inequitable, unjust and oppressive. Interest should not become principal, except by agreement of the parties. The Roman law

was constant in its condemnation of compound interest."

In 33 C. J., title "Interest," 191, § 36, the rule is stated as follows:

"It may yet be stated as a general rule that the law does not favor compound interest or interest on interest; and the general rule is that in the absence of contract therefor, express or implied, or of statute authorizing it, compound interest is not allowed to be computed upon a debt.

"It is very generally recognized that it is competent for parties to contract for the payment of such interest, although the courts of many jurisdictions have placed important limitations on this right."

Attention is also called (§ 37, p. 192) to the doctrine that,

"After interest has accrued it is perfectly competent for the parties to the obligation to agree to add the accrued interest to the principal, thus making a new principal upon which interest is to be allowed."

In the early case of *Cullen v. Whitham*, 33 Wash. 366, 74 Pac. 581, it appeared that the plaintiff had loaned to the defendants one thousand dollars, taking their promissory note, payable in three years, with interest at ten per cent per annum, payable annually, secured by a mortgage on real estate. The action was upon the note and for the foreclosure of the mortgage. The defendants admitted the execution of the documents, but denied nonpayment and pleaded an accord and satisfaction, also contending that the loan was tainted with usury. The superior court ruled that, as the note provided for an annual payment of interest, the holder was entitled to interest on overdue interest. Concerning this matter, this court said:

"But whether the note would have been usurious had it so provided, we have not found it necessary to determine, as we are clear that the court was in error

in its construction of the terms of the note. To create an obligation to pay compound interest there must be an agreement to pay interest upon interest, otherwise there is no legal obligation on the part of the borrower to do so; it is not enough that the note provides for the annual payment of interest. To agree to pay interest annually does not make the accumulated interest a separate debt in the sense that it will draw interest per force of the statute without any further promise to pay interest thereon; on the contrary, there must be a direct promise to do so before such an obligation arises. The note in question contained no promise or agreement to pay interest upon overdue interest. It was, therefore, a simple interest bearing obligation, and the interest should have been calculated at the rate of ten per centum from date until the entry of judgment."

In the case of *Lacey & Co. v. McCarthy*, 168 Wash. 579, 13 P. (2d) 11, this court, in construing a contract which, in so far as it related to interest, read:

" 'They [McCarthy and Ruddock] will charge interest on the amount of their investment and all other expenditures made by them at the rate of six per cent per annum, making the first charge hereafter on December 31, 1906, and annually thereafter, and credit themselves on said books accordingly,' "

held, quoting from *Cullen v. Whitham, supra*, that interest on the interest charged could not be recovered, saying:

"We do not see in this language any express agreement that McCarthy and Ruddock shall have compound interest upon their expenditures under the contract. The mere fact that they may annually charge the interest upon their books does not, we think, mean that such charges shall also bear interest. This is analogous to the usual words in an ordinary interest bearing money obligation that interest shall be 'payable annually.' Those words in such an obligation do not constitute an agreement to pay compound interest."

Appellant relies upon the case of *Heiland v. Grun-*

*baum,* 171 Wash. 148, 17 P. (2d) 864, which was a suit upon a guaranty made by the president of a corporation, who was also the principal stockholder, contained in a contract relating to the purchase of corporate stock by an employee of the corporation. It appeared that the president of the employer guaranteed to the employee, the purchaser, who was the plaintiff in the action, that he would pay to the employee eight per cent per annum upon money paid by the employee for the stock, unless dividends equaling or exceeding that amount were declared by the corporation. The contract also provided that, if the purchaser should cease to be an employee of the corporation, he would sell his stock to the president, who agreed to pay therefor the book value, not less, however, than the amount paid by the purchaser. During the period the employee owned the stock, no dividends were declared, and the purchaser sued the president of the corporation upon his contract. On appeal by the defendant from a judgment in plaintiff's favor, this court, *inter alia,* held that the defendant (and appellant) by his contract had agreed to pay to the plaintiff, on certain fixed dates each year, the sum of twenty-four dollars; that such payments were definitely fixed by the contract of guaranty; and that an action could have been maintained on the contract for each amount as it fell due. The contract was a peculiar one, between an employee and the president of the employer. Evidently, the court was of the opinion that the guaranteed dividends were not properly interest on a loan, and that plaintiff should be allowed interest on each amount as the same fell due.

The facts shown by the record in the case last cited distinguish that case from the cases of *Cullen v. Whitham* and *Lacey & Co. v. McCarthy, supra;* and the rule laid down in those two cases still correctly states the

law of this jurisdiction. In the absence of an express agreement to pay interest upon installments of interest not paid when due, interest should not be compounded.

■ The question, then, in the case at bar is whether or not, under the original contract between the parties, appellant, in from year to year computing the amount due upon the advance which it had made to Mr. Goodwin, correctly added the unpaid interest to the principal of the amount advanced and figured the interest upon the increased sum. The paragraph of the policy itself above quoted certainly did not provide for the compounding of interest, and we expressly so held in the *Stauffer* case, *supra*. Appellant here argues, however, that, as in the paragraph of the policy above quoted, covering the matter of a loan to be granted by the insurance company, the loan is to be "subject to the regulations of the company then in force relating to policy loans," and as these company regulations provided that the interest, if unpaid when due, should be added to the principal and thenceforth interest computed on the increased amount, such regulations became a part of the original contract between the parties; and that, when Mr. Goodwin signed the loan agreements above referred to, providing for the compounding of interest, such a provision was within the original contract, and was therefore valid.

This court has held, in conformity with the general rule, that insurance contracts are to be construed in accordance with the general rules applicable to other contracts. In the case of *Green v. National Casualty Co.*, 87 Wash. 237, 151 Pac. 509, we said:

"In thus construing the policy, we are not unmindful of the rule that policies of insurance are construed in favor of the insured and most strongly against the insurance companies. *Starr v. Aetna Life Ins. Co.*, 41

Wash. 199, 82 Pac. 113, 4 L. R. A. (N. S.) 636. But this rule should not be permitted to have the effect to make a plain agreement ambiguous and then interpret it in favor of the insured. Contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in their plain and ordinary meaning. *Imperial Fire Ins. Co. v. Coos County,* 151 U. S. 452; *Standard Life & Acc. Ins. Co. v. McNulty,* 157 Fed. 224."

The cases of *Richards v. Metropolitan Life Ins. Co.,* 184 Wash. 595, 55 P. (2d) 1067; *Miller v. Penn Mutual Life Ins. Co.,* 189 Wash. 269, 64 P. (2d) 1050; and *Isaacson Iron Works v. Ocean Accident etc. Corp.,* 191 Wash. 221, 70 P. (2d) 1026, are to the same effect.

Appellant argues that the use of the word "annual" in the provision of the policy above quoted imposed upon the insured an obligation to pay annually interest upon any advances made by the insurer, thereby fixing a rest period in the interest computation. In the *Stauffer* case, we assumed, for the purpose of argument,

" . . . that the words 'at not to exceed six per cent annual interest,' contained in the provision of the policy above quoted, mean interest at a rate not to exceed six per cent per annum, *payable annually.*"

The only question presented in the case at bar is the right of appellant to charge compound interest.

We cannot follow appellant's argument that the insurer's contract to grant a loan "at not to exceed six per cent annual interest" justified appellant in adding the unpaid interest to the principal at the end of each year and charging interest upon the new total. The decisions of this court above cited lay down a rule contrary to appellant's contention.

After careful consideration of the contract of insurance now before us, in the light of the authorities, we are of the opinion that, upon the wording of the contract, appellant cannot lawfully charge compound interest upon advances made, unless its right to do so may be based upon the regulations of the company relating to policy loans, which regulations are referred to in the paragraph of the policy above quoted.

The record shows that the applicable regulations adopted by appellant in connection with advances on its policies call for the addition of unpaid interest to the principal and the computation of interest thereafter falling due upon the new total. Such regulations, of course, cannot contradict or modify either the provisions of the statute or any term of the policy itself. The rule is well stated in the case of *Algoe v. Pacific Mutual Life Ins. Co.,* 91 Wash. 324, 157 Pac. 993, L. R. A. 1917A, 1237, in which we said:

"This loan provision of the policy is the basis of the right to demand a loan on the one hand, and the right to take a pledge of the policy to secure the loan on the other. It must, therefore, be read into the loan agreement as one of its terms."

In the later case of *Miller v. Penn Mutual Life Ins. Co.,* 189 Wash. 269, 64 P. (2d) 1050, the rule is laid down as follows:

"The liability of respondent is fixed by the terms of the contract, and its terms, if plain and free from ambiguity, must control."

The *Stauffer* case, above cited, is to the same effect.

Appellant argues that, because the paragraph of the policy above quoted does not specifically state the procedure to be followed in case the annual interest on the advance is not paid, the insurer may, by adopting regulations not set forth in the policy, provide for charging compound interest. In connection with this

phase of the case, appellant cites several cases from other jurisdictions, but in view of our own decisions, we hold that, under the terms of the policy itself, appellant cannot charge compound interest, and that any regulation which appellant may have adopted, allowing such a charge, is contrary to the express provision of the contract of insurance, and is consequently unenforcible.

Appellant also argues that the provision of the paragraph of the policy providing for loans, to the effect that a loan will be granted "upon a satisfactory assignment of the policy as collateral security," confers upon appellant the right to demand in the assignment the provision for the payment of compound interest. Upon this phase of the argument, appellant cites *Tatum v. Geist,* 46 Wash. 226, 89 Pac. 547; *McDougall v. O'Connell,* 72 Wash. 349, 130 Pac. 362, 131 Pac. 204; and *Yarno v. Hedlund Box & Lumber Co.,* 129 Wash. 457, 225 Pac. 659, 227 Pac. 518. These cases do not support appellant's position in the case at bar. The right to demand a satisfactory assignment of the policy as collateral security does not go so far as to justify appellant in demanding an assignment which provides for the payment of compound interest.

Appellant argues that the trial court erred in refusing to hold that an account had been stated between appellant and Mr. Goodwin, and that for this reason it should be held that, as matter of law, the parties had agreed upon the amount due upon the advance made to Mr. Goodwin, all in accordance with appellant's contentions. In support of this theory, appellant cites several authorities laying down general rules as to the establishment of an account stated. It appears from the evidence that, subsequent to June 6, 1918, Mr. Goodwin received from appellant each year a statement advising him concerning the amount of

interest which appellant had computed upon the money which appellant had advanced him. It does not appear that Mr. Goodwin ever objected to appellant's figures, and it does appear that thereafter he executed three new loan agreements, including interest compounded in accordance with appellant's theory of its rights. It also appears that, on two occasions, appellant figured that the cash surrender of the value of the policies had been absorbed, and notified Mr. Goodwin of this fact, whereupon Mr. Goodwin paid in cash the amounts which appellant advised him would maintain the policies in force.

As we said in the case of *National Ass'n of Creditors v. Ultican*, 190 Wash. 109, 66 P. (2d) 824,

"Generally speaking, an account stated is an agreed balance between parties who have had previous dealings involving the payment of, or agreement to pay, money; the account to become stated including an agreement that the items thereof are correct, and that the balance struck is justly due. From such a state of facts, the law presumes a promise to pay the balance as shown on the account. An account stated determines the amount of a debt, some previous liability having existed, and does not of itself create a primary obligation."

In connection with this portion of appellant's argument, it is sufficient to say that we deem the well known principles of law governing accounts stated inapplicable to such a situation as is presented by this case.

While conceding that the insurance code of 1911 applies to the policies here in suit, appellant argues that this code has no controlling effect upon the question to be here determined.

In the course of the trial, appellant attempted to prove, by a deputy in the office of the state insurance commissioner, that the latter official had con-

strued the statute in accordance with appellant's contention. For the purposes of this opinion, we will consider the offer of proof made by appellant as part of the record, and consider that the testimony was admitted. The correct rule concerning such testimony is stated in the case of *State ex rel. George v. Seattle,* 184 Wash. 560, 52 P. (2d) 360, as follows:

"If a statute be ambiguous in meaning, an administrative or executive construction of, and practice under, it will be accorded great weight. But where the meaning of the statute is plain and unequivocal, the court will construe it according to its true intent, notwithstanding a contrary construction made, or practice indulged in, by executive or administrative officers. *Long v. Thompson,* 177 Wash. 296, 31 P. (2d) 908."

We accordingly consider that the insurance commissioner has construed policies such as are now before us, under the statute in accordance with appellant's contention.

Appellant argues that the *Stauffer* case, *supra,* was decided upon a different contract of insurance, in that the provision of the policy there in question referring to loans provided that such loan would be made "subject to the regulations of the company relating to policy loans," while in the case at bar, the policies read "subject to the regulations of the company then in force relating to policy loans." Our view of the effect of company regulations, in so far as the same concern the question here presented, renders the difference between the language of the policies immaterial. While arguing that the facts of the *Stauffer* case distinguish it from the case at bar, appellant also submits that the opinion in that case is fundamentally unsound, and without support of law.

Appellant's chief criticism of the opinion in the *Stauffer* case is that this court assumed that an insur-

ance company has the right to bring suit against a policy holder for unpaid interest upon a policy loan advance, appellant arguing that such a suit is forbidden by the general law and by the insurance code of 1911, which provides that advances on policies shall be made on the sole security of the policy. It appears that the policy sued upon in the *Stauffer* case was written in 1905, long before the adoption of the insurance code. Assuming, however, that the insurer in the *Stauffer* case could not have maintained an action against the insured for past due interest, we have considered the questions here presented as not controlled by the *Stauffer* case, and have reexamined such questions.

The language of the policy whereby the company agrees to grant a loan thereon, "at not to exceed six per cent annual interest," is plain and unambiguous. The words are simple, and convey to any ordinary mind the idea of a loan at the rate of six per cent per annum. We have set forth our reasons for holding that no other portion of the paragraph of the policy containing these words authorizes appellant to charge compound interest. Certainly, the words last quoted will bear no such construction.

Appellant vigorously contends that a holding that respondent's position is correct would seriously interfere with the fundamental principle of life insurance, which, appellant argues, is that of compound interest; and that if, in such a case as this, the insurer cannot charge compound interest, the policyholder who procures an advance upon his policy, and does not pay, in cash, interest on his advance, obtains an unfair advantage over his fellow policyholders who have not requested advances.

The parties to this action are bound by the terms of the contract. Appellant did not see fit to include in the policy of insurance a statement to the effect that,

if interest on an advance to the policyholder is not paid when due, the interest should be added to the principal. No such provision is before us, and of course we express no opinion thereon.

This court long ago held that compound interest may not be charged, unless the parties have agreed therefor.

The trial court properly held that in the case at bar appellant had no right to charge compound interest, and the judgment entered in respondent's favor is accordingly affirmed.

ALL CONCUR.