[No. 12722. Department One. June 1, 1916.]

LOTTIE B. ALGOE, *Appellant*, v. PACIFIC MUTUAL LIFE INSURANCE COMPANY OF CALIFORNIA, *Respondent*.[1]

INSURANCE—LIFE INSURANCE—LAPSE—AUTOMATIC EXTENSION—RESERVE—APPLICATION—LOAN. Under a policy of life insurance providing that, after it had been in force three full years, should it lapse, the full amount of the policy at date of lapse, after payment of indebtedness, will be extended without request or demand therefor as nonparticipating term insurance, the insured when he could not pay the premiums had a right to rely upon the reserve fund for automatic extension of his insurance for such time as the surplus would buy; and when, at the time of his death, the insurer had in its hands a reserve to the credit of the insured sufficient to repay a loan and purchase the full amount of nonparticipating term insurance upon the life of the insured to that time, such term insurance was in full force.

SAME—EXTENSION—CONDITION PRECEDENT—LOAN PROVISIONS—APPLICATION OF RESERVE. In such a case, where the insured had obtained a loan, repayment of the loan is not a condition precedent to the right to set off against his loan the reserve value of the policy and have the remainder applied to the purchase of extended insurance, in view of the loan provision of the policy which declared that "any indebtedness . . . shall be first deducted in any settlement of this policy," which negatives the idea of such condition precedent.

SAME—LOAN—INDEBTEDNESS—RESERVE. In such a case, the rights being fixed as of the date of the death, there is no indebtedness due

[1]Reported in 157 Pac. 993.

from the insured at the date of the lapse where there is a reserve to his credit sufficient to meet it.

SAME—POLICY—CONSTRUCTION. An ambiguous or complex clause in an insurance policy difficult for a layman to understand is to be construed in favor of the insured.

SAME—LIFE INSURANCE — FORFEITURE — EXTENSION—LOAN PROVISION. The insurance company does not have the right to forfeit extended insurance after the death of the insured, under a loan clause providing that, upon any default in premium or interest, the company may terminate the policy and obtain the amount due by deducting the same from the reserve and apply the overplus if any as a single premium of fully paid life insurance; as this was intended only as a means of foreclosing the lien by cancellation prior to a loss, and not as a forfeiture of a liability vested and accrued by the death of the insured.

Appeal from a judgment of the superior court for Spokane county, Sessions, J., entered January 21, 1915, in favor of the defendant, in an action on a life insurance policy, tried to the court upon an agreed statement of facts. Reversed.

*Zent, Powell & Redfield,* for appellant.

*Winfield R. Smith,* for respondent.

ELLIS, J.—Action to recover on a $5,000 twenty-year life insurance policy. The case was tried on a statement of agreed facts. The policy was issued on February 15, 1902, to Otis Lee Algoe, payable to the plaintiff, his wife. The annual premium was $217.50, payable on February 15. All premiums up to and including that falling due February 15, 1913, were paid. On January 28, 1913, the insured obtained a loan of $1,477 from defendant upon the policy, executing at the time a loan contract and delivering the policy to defendant, in whose possession it still is. The annual premium on the policy and the annual interest in advance on the loan, both of which fell due on February 15, 1914, were never paid. The insured died April 15, 1914. Defendant was immediately notified of that fact. The reserve value of the policy at that time was $1,640.80. There was also an unpaid dividend of $34.75. Defendant thereafter applied this reserve value in

payment of its loan of $1,477, and entered the remaining $163.80 of the reserve as payment in full for $270 of paid up nonparticipating insurance upon the life of the insured at his then age. No policy was issued, but defendant admits that this $270 is owing to plaintiff. That sum was tendered before commencement of this action but was refused. The court found that the $270 had been deposited in the registry of the court and so remained, and entered judgment for plaintiff in that sum less the sum of $18 costs. Plaintiff appeals.

Stated in their natural order, appellant's contentions are (1) that the policy was by its terms in force for the full sum of $5,000 at the time of the death of the insured; (2) that the insurer, in any event, waived the default in payment of the premium. If the first claim is correct, the second need not be considered.

The first claim must be determined from the terms of the contract of insurance and the terms of the loan contract. This involves the construction of the application (referred to in and made a part of the policy), the policy itself and the loan agreement. The application provides:

"That such policy shall lapse and be void if any premium or installment thereon is not paid as therein provided, and that then all previous payments shall be forfeited to the company, except as therein otherwise provided;"

Among the conditions of the policy are the following:

"*Incontestability.* This policy shall be indisputable, after two years from its date of issue, for the amount due, provided the premiums are duly paid. . . .

"*Loans.* After premiums have been paid upon this policy for not less than three full years, the party having the right of surrender hereunder may borrow upon it, in accordance with the rules and regulations of the company, seventy-five per cent of its cash value at the time the loan is requested. Any indebtedness to the company, from the insured, beneficiary or assignee, shall first be deducted in any settlement of this policy.

"*Values and Additions.* If all the annual dividends apportioned to this policy are used for the purchase of additional

insurance thereto, then and in that case the values, respectively, of this policy shall be not less than stipulated in the 'Schedule of Policy Values' below; Provided, that in event of termination by 'surrender value' under said schedule, this policy shall be duly surrendered to the company while in force, or within three months of its date of lapse, and that all indebtedness above mentioned shall first be repaid."

Then follow schedules of policy values and surrender values and further provisions as follows:

"If any dividend is withdrawn or used in reduction of premium payment, this policy will nevertheless be entitled to one of the following values: (1) After payment of premiums for three full years, if duly surrendered to the company while in force or within three months of its date of lapse, any indebtedness being then repaid, to full paid nonparticipating life insurance in amount equal to as many twentieth parts of the principal sum of this policy as there have been full annual premiums paid hereon, together with any existing additions by dividend; . . .

"*Extension Condition.* After this policy has been in force three full years, should it lapse and not be surrendered as provided above, the full amount of the policy at date of lapse, any indebtedness being repaid within three months thereafter, will be extended, without request or demand therefor, as nonparticipating term insurance, but only for the period specified in the 'Schedule of Extended Insurance' following: Provided, that the said term insurance shall be based upon completed insurance years only, and that if the insured dies within three years from such lapse, all unpaid premiums, with interest at six per cent per annum, shall be deducted from the amount insured."

It is a stipulated fact that:

"The net value of the said policy above indebtedness was sufficient so that if applied at or after February 15, 1914, to the purchase of $5,000 of nonparticipating term insurance upon the life of the insured the said term insurance would have been in force at and beyond the time of his death."

It seems to be conceded that, under the provisions of the policy proper, the first condition above quoted and the appli-

cation, the policy automatically lapsed thirty days after a failure of the insured to pay any premium when due (subject to the provisions for realization of surrender value by surrender of the policy, "all indebtedness being first repaid" within three months after such lapse), unless the policy for the full sum of $5,000 was automatically kept alive by the "extension condition" last above quoted.

The appellant argues that, inasmuch as there was a reserve value in excess of the loan sufficient to carry the policy beyond the death of the insured, the policy was automatically extended for the full amount. This is based upon the fact that extension is to be made "without request or demand."

The respondent contends that the payment of the loan was a condition precedent to the right to extended insurance, because of the last provision of the extension condition that "if the insured dies within three years from such lapse, all unpaid premiums, with interest at six per cent per annum, shall be deducted from the amount insured." That because of this provision the insured had no right to set off against his loan the reserve value of his policy and have the remainder applied to the purchase of extended insurance. There would be some force in this claim were this the only thing in the policy touching the subject, but the loan provision of the policy itself, which we have quoted, declares that "any indebtedness to the company, from the insured, beneficiary or assignee, shall first be deducted in any settlement of this policy." This negatives the idea that the payment of the loan is a condition precedent to the assertion of any other rights of the insured or beneficiary under the policy. This loan provision of the policy is the basis of the right to demand a loan on the one hand, and the right to take a pledge of the policy to secure the loan on the other. It must, therefore, be read into the loan agreement as one of its terms. The status of the policy and the rights of the parties thereunder became fixed as of the date of the death of the assured. Among those rights was the right of the beneficiary to extended in-

surance, a right not forfeitable for nonpayment of premiums. At that time there stood to the credit of the assured, which of course survived to the credit of the beneficiary, a reserve value in the sum of $1,640.80. This is conceded. The policy not having been surrendered and its cash value collected nor converted into paid up nonparticipating term insurance, as provided in the condition as to "values and additions" above quoted, there can be no doubt that had there been no loan the whole of this reserve would have been automatically applied in extending the insurance for the full face of the policy. This must be, and is, conceded. This automatic extension being expressly declared to attach "without request or demand therefor," would have attached as a fixed right immediately on the lapse of the policy for nonpayment of premiums without surrender of the policy. The question is thus reduced to this: Was there any indebtedness due from the insured to the insurer at the date of the lapse? Technically, yes, but there was a reserve to his credit sufficient to meet it. As said by another court in answer to the same claim as that of respondent here:

"As it seems to us, there was no indebtedness due from the insured to the insurer when the policy lapsed on October 26, 1907, but on the contrary the company was, after deducting the indebtedness of the insured to it, due the insured a balance of $42.22, an amount sufficient to purchase an extended insurance for a period beyond his death, and he had not applied for paid-up insurance for the amount of this balance; and that by the very terms of the contract between the parties the insured had the right to rely, as doubtless he did, upon the provision contained in clause second of his policy, that he should be entitled to have the balance to his credit with the insurer applied to the purchase of extended insurance, unless he demanded paid-up insurance and surrendered his policy." *Stratton's Adm'r v. New York Life Ins. Co.*, 115 Va. 257, 78 S. E. 636.

So here the insurer had in its hands a reserve of $1,640.80 to the credit of the insured. The three months after lapse within which the loan might be paid and the insurance auto-

matically extended had not expired. The insurer could no more refuse to apply this in payment of the loan and apply the surplus to extended insurance than it could have refused a tender of the amount of the loan from any other funds of the insured and so avoid the automatic extension. This follows from the specific direction in the loan provision of the policy that any indebtedness shall be deducted in any settlement of the policy. "Any other construction would be a 'snare to the unwary'." *Stark v. John Hancock Mut. Life Ins. Co.,* 176 Mo. App. 574, 159 S. W. 758. By the very terms of the policy the insured, when he found he could not pay the premium, had the right to rely upon this course and the consequent automatic extension of his insurance for the full amount and for such time as the surplus would pay for. While the surrender of the policy and the payment of premiums within three months after lapse may be regarded as a condition precedent to the right to demand the cash value of the policy or paid up term insurance, this is because the right to so elect was in the insured and could only be so asserted. It does not follow that the payment of the loan from other sources than the reserve is a condition precedent to the right to extended insurance. That is a right which accrued automatically without any affirmative act of election. Such seems to us a reasonable construction of the policy. The extension condition is, to say the least, ambiguous and needlessly so. Its words were of the insurer's selection. Life insurance is in its nature complex and difficult for the layman to understand. Policies are prepared by experts who know and can anticipate the bearing and possible complications of every contingency. So long as insurance companies insist upon the use of ambiguous, intricate and technical provisions which conceal rather than frankly disclose their own intentions, the courts must, in fairness to those who purchase insurance, construe every ambiguity in favor of the insured. *Mathews v. Modern Woodmen of America,* 236 Mo. 326, 139 S. W. 151, Ann. Cas. 1912 D. 483. As said in *Stark v. John*

*Hancock Mut. Life Ins. Co.*, *supra*, in answer to the same contention as that advanced by the company here:

"If it had been the intention of the company to render nugatory its promise to continue the policy as paid-up insurance after two premiums had been paid, in the event there was existing indebtedness, it would have been easy to say so in unambiguous, unequivocal language."

We hold that, under this policy itself, the fact of the loan did not forfeit the right to extended insurance for the full amount of the policy.

Nor do we find that the loan contract gave the right to the insurance company to forfeit this extended insurance after the death of the insured. The loan contract does provide that:

"Upon any default hereunder in premium or interest, after delaying not less than thirty days from default (demand and notice being waived) the company may terminate said policy and obtain the amount due on said sums by deducting and retaining the same from the reserve on said policy, and the overplus, if any, shall at once be applied as a single premium of life insurance, at the present published rates of the company, to the purchase from the company, upon the life of said insured, at insured's age at such due date, of fully paid-up insurance for such amount as such overplus will so buy, payable under the same conditions as said original policy, but without premium return or participation in profits or further payment of premiums and thereupon said pledged policy and all provisions and insurance thereunder are cancelled and surrendered to the company."

This was intended only as furnishing to the company a means of foreclosing the lien on the policy by cancelling the policy prior to a loss thereon incurred by death of the insured. It was never intended as a forfeiture of rights or of the cancellation of a liability which had become vested and accrued by the death of the insured. *Stratton's Adm'r v. New York Life Ins. Co.*, *supra*; *Drury's Adm'x v. New York Life Ins. Co.*, 115 Ky. 681, 74 S. W. 663, 103 Am. St. 351, 61 L. R. A. 714. No foreclosure was then necessary or pos-

sible. The loan provision of the policy itself takes care of that contingency. It provides, as we have seen, that any indebtedness to the company from the insured, beneficiary or assignee, shall first be deducted in any settlement of this policy.

In the *Stratton* case, judgment was awarded for the full amount of the policy without any deduction of the amount of the loan, apparently on the theory that the loan had been paid in the reduced period of risk. We are not satisfied with the soundness of that view. Had there been no lapse of the policy the appellant could only have recovered the amount of the policy less the amount of the loan. At any rate the appellant admits, both in her complaint in the court below and in her brief in this court, that the amount of the loan should be deducted from the amount due in settlement of the policy.

The judgment is reversed, and the cause is remanded with direction to enter judgment for appellant in the sum of $5,034.75, with interest from May 23, 1914, the date of proof of death, less the amount of the outstanding loan and accrued interest thereon at six per cent per annum, and less, also, the amount of the unpaid premium and interest thereon at six per cent per annum.

MORRIS, C. J., MOUNT, CHADWICK, and FULLERTON, JJ., concur.