89 So.2d 329 (1956)
The PRAETORIANS, Dallas, Texas, a fraternal organization, Appellant,
v.
Ila Virginia FISHER, Appellee.
Supreme Court of Florida. Division A.
July 25, 1956.
Rehearing Denied September 24, 1956.
H.L. Killian and Cooper, Cooper & Killian, Tampa, for appellant.
V.R. Fisher, Tampa, for appellee.
HOBSON, Justice.
Appellee, Ila Virginia Fisher, filed her complaint in the circuit court, alleging that The Praetorians, a fraternal organization, appellant herein, was indebted to her in the amount of $1,000, less an outstanding loan of $167, on a life insurance policy of which she was beneficiary. Both parties moved for summary judgment which, after hearing, was granted for the appellee.
It is undisputed that the appellee is beneficiary of a life insurance policy issued by appellant on November 15, 1939, on the life of one Roy E. Lewis, in the face amount of $1,000. On May 28, 1952, the insured obtained from appellant a loan upon the policy in the amount of $167. Thereafter, he continued to pay the full premiums on the policy until he permitted it to lapse for nonpayment on May 1, 1953. On June 15, 1953, the insured was killed in an automobile accident. Interest at six per cent accrued on the loan to the insured up to the date of his death in the amount of $2.50, thus making a total indebtedness against the policy of $169.50.
The non-forfeiture provisions of the policy, where pertinent, read as follows:
"Within one month after any anniversary date hereof, or at any time *330 within thirty days after default in the payment of premiums, and after two full years' premiums shall have been paid hereon, the insured shall be entitled to select one of the following surrender options:
* * * * * *
"Option 3. Have the policy endorsed as extended term insurance.
"The values under each option are shown in the table below if there is no indebtedness against this policy. Any indebtedness will be deducted from the cash value if option 1 is selected, and will reduce the amounts under either option 2 or 3 in the proportion that the indebtedness bears to the cash value, but the extended term period will remain the same as set out in the table, unless the total indebtedness shall equal or exceed the cash value, in which event all benefits become null and void.
"Option 3 shall become effective automatically in the event the owner fails to make a selection during the thirty days after default in payments."
A "Table of Non-Forfeiture Values" followed the above provisions containing a column setting out the terms of extended insurance "For Sum Insured on Face Hereof." Since the insured did not select any option under the non-forfeiture provisions, Option 3, for extended term insurance, automatically went into effect.
The trial judge held that the provision reducing the amount of the policy in the proportion that the indebtedness bears to the cash value was null and void, because it discriminates against a borrowing insurant in contravention of F.S. § 635.02, F.S.A., which reads in pertinent part as follows:
"No life insurer doing business in this state shall make or permit any distinction or discrimination between insurants of the same class and equal expectation of life as to the amount or payment of premiums or rates charged for policies of life or endowment insurance, or in the dividends or other benefits payable thereon, or in any other of the terms and conditions of the contracts it makes. * * *"
Accordingly, it was held below that the amount of the loan plus interest thereon was to be deducted from the principal amount of the policy and would leave a balance due the beneficiary of $831.50, plus interest and costs.
Appellant contends that according to the weight of authority this non-forfeiture provision should be upheld, and should not be considered discriminatory. If this contention prevails, the face amount of the policy would be reduced in the proportion that the indebtedness against the policy bears to its cash value, which would leave something over $60 as the amount to which the appellee is entitled.
Appellee relies in great measure upon the case of Afro-American Life Insurance Co. v. La Berth, 136 Fla. 37, 186 So. 241, 246, wherein we held that a beneficiary under non-forfeiture provisions of a life insurance policy was entitled to elect to take extended term insurance where the net cash value of the policy was sufficient to purchase insurance to a date later than that upon which the insured died.
Appellant urges that our opinion in the La Berth case should be restrictively interpreted, and argues that we did not there pass upon the precise issue now presented. To demonstrate the scope of our consideration of the basic problem, we quote the following language from our opinion in that case:
"Defendant then contends that because there was an indebtedness existing on the policy at the time of default in payment of premium the insured by his representative is precluded from selecting option No. 3, under the non-forfeiture provisions of the policy. The policy contained the following provision:

*331 "`Any indebtedness to the Company under this Policy will be deducted from the cash value; and such indebtedness will also reduce the amount of paid-up insurance or the amount continued as term insurance in such proportion as the indebtedness bears to the cash value at due date of premium in default.'
"True it is that option No. 3 states that extended insurance may be received `provided there is no indebtedness to the Company hereon', but this provision is explained by the above quoted lines showing that an indebtedness should proportionately reduce the value of all the non-forfeiture provisions. The period for which extended insurance is granted is reduced because of the indebtedness, and where there are still funds available to the credit of the insured, as is the case here, such funds must be applied by the insurance company to an election from the non-forfeiture provisions. [Emphasis supplied.]
"In addition to this, provisions in life insurance policies which discriminate between borrowing and non-borrowing insurants, as regards options allowed, have, in most cases where the question has arisen, been held to be invalid, either in that they violate a statute prohibiting discrimination between insurants of the same class, or because such discrimination is deemed opposed to public policy."
The result of the La Berth case was that we declined to disturb a judgment for the beneficiary in the face amount of the policy less the amount of the indebtedness, i.e., a judgment reached by the application of the same formula used by the trial judge in the instant case. This result was reached in the La Berth case in spite of the language we there quoted from the policy and its similarity with the language of the policy here confronting us.
Appellant contends that there is no discrimination between borrowing and non-borrowing insurants in the policy in suit, because Option 3 would come into effect automatically after default on the premiums, where no other option is selected, whether the insured had borrowed or not. But the provision of the policy styled Option 3 operates very differently upon borrowing and non-borrowing insurants in otherwise identical situations, and our inquiry must be whether the difference in treatment is justified by the difference in status, as the appellant would have us hold. It might not be amiss, at this juncture, to observe that our statute forbids discrimination "in the dividends or other benefits payable thereon, or in any other of the terms and conditions of the contracts it makes * * *." (Emphasis supplied.)
Appellee points out that the amount payable to the beneficiary of a non-borrowing insurant, otherwise situated identically with the insurant herein, would be the face amount of the policy, or $1,000, whereas under the facts of the instant case the insurance company seeks to apply the proportional formula which reduces the amount payable to considerably less than one tenth of the face value, even though (1) the policy was security for the loan (up to the amount of the "reserve" or "cash or loan value", in this case $182); (2) the insurance company has repaid itself out of the reserve for the amount of the loan plus interest thereon (in this case $169.50); and (3) there is a residual sum, or "net cash reserve", left in the hands of the insurance company to purchase term insurance (in this case the "net cash reserve" was $12.50). It will thus be seen that the borrower from the insurance company is severely penalized in the amount of his term insurance coverage simply by virtue of his status as borrower. If he had borrowed from a third party, and pledged his policy as security, the result would have been far different than that contended for by the appellant. The beneficiary *332 would be entitled to the face value of the policy minus the amount of the loan with interest.
At the heart of appellant's contention that the trial court erred in ruling that the policy provisions we are discussing are discriminatory is the argument that the term of the extended term insurance is fixed by the policy, and that the amount of such insurance which the net cash reserve will buy is therefore variable. It is urged that the insurance company may be held liable for no more extended term insurance than the net cash reserve will buy, and that such insurance may be varied in either of two respects: the amount payable to the beneficiary at the death of the insured, or the length of the term for which any amount is payable. Thus the net cash reserve may be applied to a comparatively small amount of insurance for a long term or to a comparatively large amount of insurance for a short term. In considering a policy which has no language fixing the term, as in the La Berth case, the court may interpret the policy in the light most favorable to the beneficiary, as was done in that case. Appellant, however, points to the language in its policy "but the extended term period will remain the same * * *" and contends that this language fixes the term and that there is therefore no alternative but to reduce the amount payable in accordance with the proportional formula.
The insured paid premiums on this policy for over 12 years, and the policy was in effect for over 13 years when the insured died. At the end of policy year 13, the "Table of Non-Forfeiture Values" shows that the term of "Extended Insurance for Sum Insured on Face Hereof" is 36 years. The language "but the extended term period will remain the same", read in conjunction with the table, would appear to mean that the term is fixed at 36 years, and if such were the case a drastic reduction in the "Sum Insured on Face Hereof" might reasonably be anticipated in spite of the caption on the table. The policy provision does not end with the language fixing the term, however, but is immediately sharply qualified by the words "unless the total indebtedness shall equal or exceed the cash value, in which event all benefits become null and void." Under another part of the policy, entitled "Loan Privilege", it is stated in part:
"Interest at the rate of 6% for one year shall be paid in advance or deducted out of the proceeds of the loan, and shall be payable annually in advance thereafter as long as the loan remains unpaid. If interest is not paid when due, it shall be added to the principal and bear interest at the same rate. No loan made under this provision shall avoid the insurance hereunder unless the loan and other accrued indebtedness hereon shall equal or exceed the cash value when the loan is due or when there is a default in the payment of premiums."
The time when the loan is to be considered "due" is apparently not specifically provided in the policy. It is quite clear, however, that interest upon the loan, as well as interest upon items of interest added to the principal, will absorb the net cash reserve at a rapid rate, and that when this reserve is completely absorbed, "all benefits become null and void." Thus the "fixed" term of 36 years, so emphasized by the appellant insurance company in this case, is completely illusory. If the net cash reserve had been absorbed before the death of the insured, the insurance company could contend that it had no liability whatever on the policy. Indeed, in its reply brief it states in part:
"If the insured had borrowed all of the reserve, viz: $182.00, should he be allowed to insurance [sic] in any amount? The policy would have a zero value. How much security could such policy give for a loan? The policy states that in such case the insured is entitled to no insurance."
*333 This, of course, would also be the case where the net cash reserve had been absorbed by the accumulation of interest.
Since the term fixed in the table cannot be used here, the application of the proportional formula in this case would be discriminatory in nature, as the trial judge held, and the ruling below was entirely consistent with the La Berth case. It is not contended by the appellant that the funds of the insured in its possession were insufficient to pay a reasonable premium on extended term insurance in the face amount of the policy for the short term occurring between the automatic commencement of such coverage and the death of the insured. If such were the case, and the matter were properly raised by the insurance company as a defense to a claim by the beneficiary, there would be no coverage by extended term insurance unless some formula were available to reduce the amount of the policy and extend the term to encompass the death of the insured, and we express no opinion regarding the validity of the proportional formula in such case. It is sufficient for present purposes to hold, as we do, that no error has been shown in the judgment appealed from, which must accordingly be affirmed.
In affirming this judgment, we have not overlooked the cases from other jurisdictions, cited by the appellant, holding generally that a proportional reduction formula, such as is contained in the provision we have discussed above and in the policy which was before us in the La Berth case, is valid. This is said to be the majority view, 2 Appleman Insurance Law and Practice, Sec. 1937, and cases cited. We have examined these cases and find that in some the collateral policy provisions were different from, or not shown to be the same as, those now before us, and that there were some statutory differences. A single insurance policy provision must not be considered in isolation, but should be construed with other policy provisions, against the background of the case. See James v. Gulf Life Ins. Co., Fla., 66 So.2d 62. Insofar as the results reached in the cases cited by appellant are inconsistent with the result that we have reached, we think that the application of a general rule upholding the proportional formula would represent an oversimplification of the problem here before us and would result in injustice to the beneficiary.
Life insurance policies are prepared by experts in this complex field, and the interplay of their various provisions is intricate and difficult for the layman to understand. For this reason, the public interest requires that a policy be interpreted by the courts in the manner most favorable to the insured, Sovereign Camp, W.O.W. v. Lee, 125 Fla. 736, 171 So. 526; New York Life Ins. Co. v. Kincaid, 122 Fla. 283, 165 So. 553; and Algoe v. Pacific Mutual Life Ins. Co. of California, 91 Wash. 324, 157 P. 993, L.R.A. 1917A, 1237, and also that statutes governing insurance contracts be liberally construed so as to protect the public, Covington v. Covington, Tex.Civ. App., 271 S.W.2d 849; Utah Ass'n of Life Underwriters v. Mountain States Life Ins. Co., 58 Utah 579, 200 P. 673; 44 C.J.S., Insurance, § 65.
Affirmed.
DREW, C.J., and TERRELL and THORNAL, JJ., concur.