[No. 33520. Department One. September 20, 1956.]

SELECTIVE LOGGING COMPANY *et al., Appellants,* v. GENERAL CASUALTY COMPANY OF AMERICA, *Respondent.*[1]

[1]Reported in 301 P. (2d) 535.

*Guttormsen, Scholfield, Willits & Ager*, for appellants.

*Gordon H. Sweany* and *Willard S. Pedersen*, for respondent.

DONWORTH, C. J.—This is an action by plaintiff insured against defendant insurer to recover upon a blanket liability insurance policy for a loss sustained as the result of settlement of a prior lawsuit wherein the insured (a third-party defendant), with the knowledge and consent of the insurer, contributed twenty-five hundred dollars to settle that suit. The case was submitted to the trial court upon the pleadings and an agreed statement of facts. Judgment dismissing the action was entered based upon the conclusion that the loss fell within the provisions of a "Products and Completed Works Exclusion" endorsement attached to the policy.

Selective Logging Company, a Washington corporation now in the process of dissolution (hereinafter referred to as appellant), was engaged in the business of logging near Rockport, Washington.

On October 22, 1952, appellant loaded a railway car owned by the Great Northern Railway (hereinafter referred to as the railway) with logs owned by the Anacortes Plywood Company, pursuant to a contract between the latter and appellant. Subsequently, the railway moved the car from the premises of appellant to a point approximately five hundred yards away therefrom. During switching operations, but while the car was not in motion, the logs became dislodged and rolled off the car, striking and killing a railway brakeman as he was walking beside the car.

On July 15, 1953, a wrongful death action (herein called the tort action) was commenced by the personal representative of the decedent against the railway. In the same action on January 6, 1954, the railway filed a third-party complaint against appellant, wherein a judgment was sought against

the latter for any and all sums which might be awarded the decedent's personal representative. The asserted basis of liability in the tort action was founded upon the allegation that appellant was negligent in the loading of the logs. Appellant tendered the defense of the tort action to respondent, which denied liability and refused to accept and defend the action.

The instant action was instituted by appellant to recover the amount paid by appellant in settlement of that lawsuit and attorneys' fees incurred in connection therewith.

The decision in this case rests upon the proper interpretation of the insurance policy. This policy, alleged by appellant to have covered the loss, was in full force and effect at all times herein mentioned. It was a blanket liability policy and contained, among others, the following provisions:

"INSURING AGREEMENTS

"I. BODILY INJURY AND PROPERTY DAMAGE LIABILITY:
To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability assumed by him under contract (excluding liability under any contract not wholly in writing) or imposed upon him by law
(a) for damages, including damages for care and loss of services, because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained or alleged to have been sustained by any person or persons; . . .

"II. DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS:
As respects the insurance afforded by the other terms of this policy under Insuring Agreement I.
(a) to defend in his name and behalf any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company shall have the right to make such investigation, negotiation and settlement of any claim or suit as may be deemed expedient by the company; . . ."

Respondent denied liability and refused to defend the tort action because the insurance policy contained an endorsement reading as follows:

"PRODUCTS AND COMPLETED WORKS EXCLUSION

"In consideration of the premium at which this policy is written, it is agreed this policy does not apply to liability, claims or expense arising out of:

(1) the consumption, *handling* or use of or the existence of any condition in, *any article* or product manufactured, sold, *handled* or distributed *by the insured,* after the insured has relinquished possession thereof to others and away from premises owned, rented or controlled by the insured, except equipment or other property rented to or located for the use of others but not sold; . . ." (Italics ours.)

We are not confronted with any factual dispute. The basis of liability asserted against appellant in the tort action was alleged negligence in the loading of the logs. Since respondent has stipulated that the settlement was reasonable and has waived any defense based upon voluntary payment of the claim, we assume that appellant acted in good faith and that there was asserted a liability imposed upon the assured by law within the meaning of the insuring agreements. See *Evans v. Continental Cas. Co.,* 40 Wn. (2d) 614, 245 P. (2d) 470.

The question as to respondent's liability is solely one of law involving the correct interpretation to be placed upon the "Products and Completed Works Exclusion" endorsement (heretofore quoted in full). Deleting unnecessary language, the exclusionary provision reads:

"liability . . . arising out of . . . handling . . . any article or product . . . handled or distributed by the insured, . . ."

The parties herein agree that the accident which resulted in the death of decedent was caused by an article (logs) handled by appellant. They further agree that the accident occurred after the insured (appellant) had relinquished possession of the logs to others (the railway) and away from the premises of the insured. However, they disagree as to the proper interpretation of the word "handling" as used in the exclusionary provision.

Appellant contends that the logs were being *transported*

by the railway and were not *handled* by it, and that, therefore, the exclusionary provision does not apply, and thus respondent is liable under the policy. In support of this argument, appellant relies upon dictionary definitions of the word "handling" as meaning to touch, feel, or manipulate with the hands. Appellant draws the conclusion that, therefore, no one was handling the logs at the time of the accident.

On the other hand, respondent contends that the word "handling" is broad enough to include transportation, and that such movement of the logs by the railway was a handling of them.

The pivotal question in this case is: Did the accident arise out of a *handling* of the logs by the railway within the meaning of the exclusionary provision? If answered in the affirmative, the trial court was correct and the loss was not covered by the policy in question.

It is the established rule in this state that, where a provision of a policy of insurance is capable of two meanings, or is fairly susceptible of two different constructions, that meaning and construction most favorable to the insured must be applied, even though the insurer may have intended another meaning. *Kane v. Order of United Commercial Travelers of America*, 3 Wn. (2d) 355, 100 P. (2d) 1036, and cases cited; *Jeffries v. General Cas. Co. of America*, 46 Wn. (2d) 543, 283 P. (2d) 128.

It is equally the well-settled rule that a word used in the insurance contract is to be construed in its ordinary signification. *Port Blakely Mill Co. v. Springfield Fire & Marine Ins. Co.*, 59 Wash. 501, 110 Pac. 36, 28 L. R. A. (N.S.) 596; *Kane v. Order of United Commercial Travelers of America, supra*; *Christensen v. Sterling Ins. Co.*, 46 Wn. (2d) 713, 284 P. (2d) 287.

The exclusionary provision involved in this case does not define the term handling. There is no mention of intermediate parties (transporters) between the insured (whether he be the manufacturer or handler) and the ultimate consumer. The first clause of the exclusionary provision ex-

cepts liability arising out of "the consumption, *handling* or use of or the existence of any condition in, any article . . . handled . . . by the insured." It is just as plausible to conclude that this provision refers to defects in the article resulting in injury to the ultimate consumer only, as it is to conclude that it refers to some happening occurring between the time of delivery of the article by the insured to an intermediary and the time of delivery by the latter to the ultimate consumer.

Respondent attempts to avoid ambiguity in the above provision by stating that transportation is handling. However, no authority is cited to sustain this bare assertion. The word "handling" has been construed to have different connotations, varying with the environment in which it is framed, but none so broad as that contended by respondent. See 19 Words and Phrases (Perm. ed.) 52 *et seq.*, 39 C. J. S. 770.

While we believe appellant's asserted meaning of the word "handling" is too narrow, we are convinced that the word cannot be extended to include transportation under the facts of this case.

If respondent is to bring the acts here within the exclusionary provision, it must do so by specific language which can be plainly and clearly understood. The exclusionary provision exempts a certain class of acts for which the insurer is not liable "after the insured has relinquished possession thereof to others and away from the premises owned" by the insured. Although the accident happened away from the premises owned by the insured, the above quoted clause does not itself relieve respondent, since the accident did not arise from handling the logs under any of the exclusions provided within the policy.

Respondent has cited a number of cases in support of its position of nonliability, which we do not find it necessary to discuss at length, since they are readily distinguishable. This group of cases includes *Lyman Lbr. & Coal Co. v. Travelers Ins. Co.*, 206 Minn. 494, 289 N. W. 40, which involved a contaminated product (dynamite caps mixed with the coal). Similar cases cited deal either with a contaminated

product (*Loveman, Joseph & Loeb v. New Amsterdam Cas. Co.*, 233 Ala. 518, 173 So. 7), or arose where there was possession, handling, or use *by the consumer*. Others contain a premises liability provision, which is much more specific than the exclusionary provision under consideration herein. See *Jeffries v. General Cas. Co. of America, supra*; *Hultquist v. Novak*, 202 Minn. 352, 278 N. W. 524.

In *Philadelphia Fire & Marine Ins. Co. v. Grandview*, 42 Wn. (2d) 357, 255 P. (2d) 540, this court considered a claim for damages against the city resulting from an explosion of methane gas entering a house through municipal water pipes. The insurance policy contained an exclusionary provision nearly identical to the one quoted herein. The city did not manufacture or sell gas, but gas had been introduced into the municipal water pipes through the negligence of city employees. This court did not define the terms handling or handled, but concluded that the insurance company was liable, since the city had not "handled or distributed" the gas, stating that "The city was selling, handling, or distributing water—not gas." The case is not in point.

Nor does the case of *Employers Mut. Liability Ins. Co. v. Underwriters at Lloyd's*, 80 F. Supp. 353, affirmed 7 Cir., 177 F. (2d) 249, support respondent's position.

In that case, a roll of paper, negligently loaded, fell out of a railway car at the point of destination and killed an employee of a trucking company who had opened a door on the car. The court held the reinsurer liable under a "Products Liability" provision within the reinsurance policy. It was held that the lower court did not err in applying the rule that ambiguities in the insurance contract will be resolved in favor of the insured. The case actually supports appellant's position and sustains the reasons given herein for holding respondent liable upon the policy in question.

We conclude by holding that transportation is not *handling* within the meaning of the "Products and Completed Works Exclusion" endorsement involved in this case,

and that, therefore, the loss was covered by the blanket liability policy.

The judgment is reversed with instructions to enter judgment for appellant for the amount prayed for in its complaint.

SCHWELLENBACH and OTT, JJ., concur.

FINLEY, J., concurs in the result.

---

November 20, 1956. Petition for rehearing denied.

