[Nos. 52645–1, 50285–4.   En Banc.   October 8, 1987.]

JOHN GREER, *Petitioner,* v. NORTHWESTERN NATIONAL INSURANCE COMPANY, *Respondent,* LYNDA PETERSON, *Petitioner.*

LYNDA PETERSON, *Respondent,* v. JOHN GREER, *Respondent,* NORTHWESTERN NATIONAL INSURANCE COMPANY, *Petitioner.*

*Davies Pearson, P.C.,* by *Edward S. Winskill,* for Greer.

*Schweinler & Lowenburg,* by *Timothy J. Lowenburg,* for Peterson.

*Robert P. Karr, Philip A. Talmadge,* and *Mark R. Johnsen* (of *Karr, Tuttle, Koch, Campbell, Mawer, Morrow & Sax, P.S.*), for Northwestern National Insurance Company.

DURHAM, J.—We have before us two consolidated cases, a personal injury action and a related action over insurance coverage. In Peterson v. Greer ("personal injury action"), a

passenger on a motorcycle sued the motorcycle's driver for personal injuries suffered in an accident. After the driver's insurance company refused to defend him, a default judgment was entered against the driver. The insurance company later moved to intervene to set aside the default judgment, but a trial judge denied the motion. The insurance company has appealed. In Greer v. Northwestern ("insurance action"), the same driver sued the insurance company for its refusal to defend him in the personal injury action. A different trial judge held that the insurance company's refusal to defend constituted a breach of contract. He then awarded damages in excess of the policy limits based on his finding that the insurance company acted in bad faith. All parties have appealed. In the insurance action, we affirm the trial judge's holding that the insurance company breached its contract. However, we reverse on the issue of damages, holding that the recovery cannot exceed the policy limits. Due to our holding in the insurance action, we are not called upon to reach the intervention issues raised in the personal injury action.

On May 28, 1979, John Greer lost control of his motorcycle and crashed while negotiating a freeway off-ramp. The accident caused severe injuries to Greer's passenger, Lynda Peterson.[1] At the time of the accident, Greer's motorcycle was insured with Northwestern National Insurance Company.

Greer's policy contains an exclusion that is crucial to the outcome of this case. This exclusion, entitled the "Guest Liability Exclusion", reads as follows: "We do not provide Liability Coverage: . . . For any person while occupying your covered motorcycle. This exclusion does not apply to you." At the time when Greer purchased his policy, his

---

[1]Peterson was unconscious for approximately 1 week and was immobilized in a full body cast for roughly 2 months. She suffered a crushed right foot and ankle, a broken left femur, a crushed pelvis, a ruptured spleen, and cuts to her lip and hand. These injuries triggered a variety of physical and emotional difficulties which have continued to the present day. Future surgery or treatment is possibly indicated.

insurance agent told him that under the Guest Liability Exclusion, he would not have coverage for claims brought against him by a passenger.

On January 15, 1980, Peterson served Greer with a summons and complaint alleging that he was negligent in causing her injuries.[2] The complaint was filed 2 days later. On January 18, Greer met with Northwestern's claims adjuster and showed him the summons and complaint. After reading the documents, the claims adjuster refused to defend Greer, based on the Guest Liability Exclusion.

In February 1980, Peterson signed a "covenant not to execute on judgment" in exchange for Greer's payment of $10. By so signing, Peterson agreed not to seek to collect against Greer's property any judgment recovered against him. Greer also agreed to cooperate with her in any subsequent action against Northwestern.

On March 11, 1980, a default order was entered against Greer. On July 18, the parties presented formal proof before Pierce County Superior Court Judge Worswick for entry of final judgment. At that hearing, Greer described how he caused the accident and Peterson testified as to the extent of her injuries. On October 17, Judge Worswick entered a final default judgment for Peterson in the amount of $555,297.86.

On December 11, 1980, Greer initiated the insurance action against Northwestern for its refusal to defend him.[3] The complaint in the insurance action provided Northwestern with its first knowledge that a default judgment had been entered against its insured. On March 5, 1981, Northwestern moved to intervene in the personal injury action and to vacate the default judgment, alleging that Greer and Peterson obtained the judgment through collusion and fraud. Judge Worswick denied these motions and

---

[2]Sometime a month or two earlier, Greer and Peterson began living together.

[3]Also around this same time, Greer and Peterson were married. Because Greer and Peterson eventually divorced, we will continue to refer to Lynda as "Peterson".

Northwestern appealed.

Greer's complaint in the insurance action sought the following items of damage: the amount of the underlying default judgment, Greer's attorney fees in defending that underlying action, damages for infliction of emotional harm, punitive damages, and attorney fees under the Consumer Protection Act. Judge Brown of the Pierce County Superior Court entered summary judgment dismissing Greer's cause of action because his policy did not provide him with coverage. If there was no coverage, then Northwestern had no contractual duty to defend.

Greer appealed this decision to the Court of Appeals. Northwestern also had appealed the denial of its motions to intervene and vacate in the personal injury action. The two appeals were consolidated. The Court of Appeals concluded that there was no coverage under Greer's policy, and accordingly affirmed the summary judgment dismissal in the insurance action. By so holding, it did not have to decide the intervention and vacation issues of the personal injury action. *Greer v. Northwestern Nat'l Ins. Co.*, 36 Wn. App. 330, 674 P.2d 1257 (1984). All parties sought review in this court.

While the petitions were pending, new evidence came to light. A deputy insurance commissioner, his curiosity triggered by reading the Court of Appeals opinion, discovered a letter in his files in which Northwestern officially adopted a position contradictory to its position in the Greer litigation. In that letter, a senior research analyst for Northwestern, Cecelia Clow, responded to the deputy insurance commissioner's interpretation of Northwestern's Guest Liability Exclusion. The deputy insurance commissioner had expressed to Northwestern his conclusion that the exclusion served only to deny coverage for claims brought by third parties against the passenger, and that there was still coverage for claims brought by a passenger against the insured operator. After the deputy insurance commissioner requested that Northwestern respond to this interpretation, Clow sent a letter agreeing with the deputy's analysis. This

statement flatly contradicted the position Northwestern was taking in the Greer litigation, *i.e.*, that claims brought by a passenger were excluded from coverage.

Upon receipt of this new evidence, Greer and Peterson moved in the superior court and this court to vacate the summary judgment entered in the insurance action. That judgment was vacated on August 3, 1984.[4] Northwestern's petition for review in the personal injury action was left pending in this court, subject to the resolution of the insurance action.

After further discovery, both parties again moved for summary judgment in the insurance action. Greer and Peterson argued that the Clow letter bound Northwestern on the issue of Greer's coverage and, therefore, Northwestern should be liable for the full $550,000 default judgment entered in the personal injury action. Northwestern argued that there was no coverage under Greer's policy, and that even if there was coverage, Northwestern would only be liable up to the limits of Greer's policy, $15,000. Judge Brown held that the policy covered Peterson's injuries because Clow's letter bound Northwestern. As to damages, however, Judge Brown took a middle road. He held that Greer and Peterson could recover beyond the $15,000 policy limits, but that they were not necessarily entitled to the full $550,000 amount of the default judgment. Rather, he held that Greer and Peterson could not recover anything until Peterson proved at trial: (1) Greer's liability to Peterson, (2) the extent of Peterson's damages, with the amount of the default judgment not being binding on the jury, and (3) the proximate causation of the default judgment by Northwestern's negligence. In effect, Judge Brown's ruling required Peterson and Greer to relitigate the personal injury action in order to determine damages in the insurance action. Judge Brown also held as a matter of law that Northwestern had acted in bad faith in its handling of the

---

[4]Thirteen days later Greer and Peterson separated. They were divorced in July 1985.

insurance action.

Northwestern now challenges the conclusions that it breached its contract and acted in bad faith, as well as the awarding of damages beyond its $15,000 policy limits. Greer and Peterson challenge the trial court's refusal to award them as damages the full amount of the underlying default judgment. Finally, if this court affirms the awarding of damages beyond the policy limits, Northwestern also seeks review of the denial of its motions to intervene in the personal injury action.

I

BREACH OF CONTRACT

This court has already established certain principles for determining when an insurance company's refusal to defend its insured constitutes a breach of contract:

> The general rule is that insurers who have reserved the right and duty to defend are obliged to defend any suit which alleges facts wherein, if proven, would render the insurer liable. However, alleged claims which are clearly not covered by the policy relieve the insurer of its right and duty to defend.

(Citations omitted.) *State Farm Gen. Ins. Co. v. Emerson,* 102 Wn.2d 477, 486, 687 P.2d 1139 (1984).

Northwestern included a provision in Greer's insurance policy in which it assumed the duty to defend him. Therefore, its refusal to defend represented a breach of its contract unless Peterson's claim was clearly not covered by Greer's policy.

A basic rule of construing insurance policies is that a court first looks to determine the parties' intent as expressed in their writing. 2 G. Couch, *Insurance* § 15:10 (2d ed. 1984); *Tsapralis v. Public Employees Mut. Cas. Co.,* 77 Wn.2d 581, 582, 464 P.2d 421 (1970). A court must give effect to language that clearly and unambiguously expresses the parties' intent. 2 G. Couch § 15:10. *See, e.g., E–Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.,* 106 Wn.2d 901, 907, 726 P.2d 439 (1986).

## A
### Existence of Ambiguity

This court has recently set out certain principles to determine if an ambiguity exists in an insurance policy exclusion:

> It is a general rule of insurance contract construction that an insurance policy must be meaningful to a layman who at his peril may be legally bound or held to understand the nature and extent of its coverage. Policy language is to be interpreted in accordance with the way it would be understood by the average man. *Dairyland Ins. Co. v. Ward*, 83 Wn.2d 353, 358, 517 P.2d 966 (1974). A clause in a policy is ambiguous when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable. *Morgan v. Prudential Ins. Co. of Am.*, 86 Wn.2d 432, 435, 545 P.2d 1193 (1976).

*Vadheim v. Continental Ins. Co.*, 107 Wn.2d 836, 840–41, 734 P.2d 17 (1987).

Accordingly, we must determine if the average person would understand Greer's policy as unambiguously denying coverage to claims brought by his passenger. In order to make this determination, we must examine the language in the "Guest Liability Exclusion" to see if it is fairly susceptible to differing reasonable interpretations, as seen through the eyes of the average person. Once again, the exclusion reads as follows:

### Guest Liability Exclusion

We do not provide Liability Coverage: . . . For any person while occupying your covered motorcycle. This exclusion does not apply to you.

The parties have submitted two contrasting interpretations of this language. Northwestern interprets this provision to exclude coverage when a passenger sues the insured motorcycle operator. Greer and Peterson interpret this provision to exclude coverage only when a third party sues the passenger for her own negligence in causing an accident.

We hold that both of these interpretations are reasonable. The exclusion's language is too vague and ambiguous,

when looked at from the perspective of the average person, for us to conclude that only one interpretation is reasonable.

Two specific aspects of the exclusion render it ambiguous. First, the caption announcing a "Guest Liability Exclusion" is itself ambiguous. That phrase can be interpreted to mean the host's liability to the guest, or the guest's liability to a third person. An average person would not know which meaning the insurance company intended. The ambiguity is compounded because the term "guest liability" on its face suggests more the meaning of a guest's liability, yet this would be unusual in the context of insurance, where people generally do not purchase additional liability coverage for others.

Second, the text of the exclusion also contains a similar ambiguity. The language is not clear as to whose coverage is being discussed, that of the guest or that of the host. Northwestern's interpretation would read as follows: "We do not provide Liability Coverage [to you] for [claims advanced by] any person while occupying your covered motorcycle. This exclusion does not apply to you." Greer and Peterson, on the other hand, would interpret the language in this manner: "We do not provide Liability Coverage [to] any person while occupying your covered motorcycle. This exclusion does not apply to you." A straightforward reading of this language would suggest that the guest's liability is being discussed, but again this would be unusual in the context of insurance coverage. Thus, we conclude that neither interpretation is more reasonable than the other.

Northwestern has raised another argument in order to show that Greer's policy unambiguously barred claims brought by a passenger. Northwestern points out that the policy's declaration page showed that Greer did not pay a special premium to acquire "passenger liability". We find this argument unpersuasive, however. "Passenger liability"

is no less ambiguous than is "guest liability" and, therefore, does nothing to clear up the policy.[5]

## B
### Resolution of Ambiguity

When the parties' language is ambiguous, the principal goal of contractual construction is to enforce the parties' intent. *Jacoby v. Grays Harbor Chair & Mfg. Co.*, 77 Wn.2d 911, 918, 468 P.2d 666 (1970); *Jones Assocs. v. Eastside Properties, Inc.*, 41 Wn. App. 462, 467, 704 P.2d 681 (1985). This intent is to be determined

> by viewing the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of respective interpretations advocated by the parties.

*Stender v. Twin City Foods, Inc.*, 82 Wn.2d 250, 254, 510 P.2d 221 (1973), *quoted in Millican of Wash., Inc. v. Wienker Carpet Serv., Inc.*, 44 Wn. App. 409, 416–17, 722 P.2d 861 (1986) and *Jones Assocs. v. Eastside Properties, Inc., supra* at 467.

Accordingly, the parties have each argued that certain extrinsic evidence supports their position. Northwestern points out that Greer was told at the time of his purchase that his policy did not cover claims brought by his passenger. On the other hand, Peterson and Greer argue that the letter written by Cecelia Clow represented a binding statement that Northwestern intended the policy to provide such coverage.

---

[5]As a comparison, we point to the unambiguous drafting of a similar exclusion found in an insurance policy involved in a recent case before this court, *Progressive Cas. Ins. Co. v. Jester*, 102 Wn.2d 78, 683 P.2d 180 (1984). That policy provided that "we will only pay for injury to a passenger on your cycle, if a premium has been paid by you for Guest Passenger Liability and is shown on the Declarations Page." Brief of Appellant, *Progressive Cas. Ins. Co. v. Jester*, at 5. There can be no doubt that this language unambiguously excludes from coverage those claims made by the insured's passenger. The language in Greer's policy simply does not contain such a clear communication.

Unfortunately, this extrinsic evidence is of little aid in clarifying the contract. Although the court may take into consideration the parties' own construction of ambiguous language, "[a] construction by one party does not control, and where the acts of the parties indicate contrary understandings, there is no practical construction overcoming the language of the contract." 2 G. Couch, *Insurance* § 15:53 (2d ed. 1984).

The evidence in this case establishes that the parties had contrary understandings. Northwestern, through Clow, interpreted the language to provide coverage to Greer; Northwestern's agent understood it to exclude coverage; and Greer himself expressed no independent understanding but apparently did not object to the agent's interpretation. This represents a reversal of the usual positions in an insurance case, because here the insurer believed that coverage existed while the insured believed, if anything, that coverage did not exist.

Therefore, the policy remains ambiguous even after consideration of the extrinsic evidence. In this situation, courts turn to the rule that ambiguities in an insurance contract are resolved against the insurer.

> Where a provision of a policy of insurance is capable of two meanings, or is fairly susceptible of two constructions, the meaning and construction most favorable to the insured must be employed, even though the insurer may have intended otherwise. This rule applies with added force in the case of exceptions and limitations to a policy's coverage.

(Citations omitted.) *Shotwell v. Transamerica Title Ins. Co.*, 91 Wn.2d 161, 167–68, 588 P.2d 208 (1978). *See also, e.g., Vadheim v. Continental Ins. Co.*, 107 Wn.2d 836, 841, 734 P.2d 17 (1987); *E–Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.*, 106 Wn.2d 901, 907, 726 P.2d 439 (1986); *Morgan v. Prudential Ins. Co. of Am.*, 86 Wn.2d 432, 435, 545 P.2d 1193 (1976).

Under this rule, Greer's policy must be construed as providing coverage for Peterson's claim. Because there was

coverage, Northwestern's refusal to defend Greer constituted a breach of contract.

## II
### DAMAGES

Having determined that Northwestern breached its contract, we now address the issue of damages. Judge Brown held that Peterson and Greer could recover damages in excess of Greer's policy limits if (1) they could establish that Northwestern acted in bad faith in refusing to defend Greer, and (2) Peterson relitigated the personal injury action. Judge Brown, however, had no jurisdiction over the personal injury action, because a final judgment had already been entered in that matter by Judge Worswick. Thus, damages must be calculated in another manner.

The general rule is that when an insurer breaches its contract, the insured must be put in as good a position as he would have been had the contract not been breached. 14 G. Couch, *Insurance* § 51:158 (2d ed. 1982). In the context of damages created by an insurer's wrongful refusal to defend, this rule has been further refined. Recoverable damages include, among other items, (1) the amount of expenses, including reasonable attorney fees, the insured incurred in defending the underlying action, and (2) the amount of the judgment entered against the insured in the underlying action. 14 G. Couch §§ 51:157–:159; *Waite v. Aetna Cas. & Sur. Co.*, 77 Wn.2d 850, 856, 467 P.2d 847 (1970); *Bosko v. Pitts & Still, Inc.*, 75 Wn.2d 856, 867, 454 P.2d 229 (1969).

As to the first element—expenses incurred—there is no debate. Greer incurred $510 in attorney fees in seeking advice for the defense of the personal injury action. Northwestern has not challenged the reasonableness of these fees, and Greer is entitled to recover the full $510.

The second element of damages requires closer analysis. Insurance companies that wrongfully refuse to defend are generally liable for the amount of the judgment entered in the underlying action. The liability, however, usually

extends only to the policy limits.[6] 14 G. Couch § 51:58; *Waite,* at 856; *Bosko,* at 867; Annot., *Consequences of Liability Insurer's Refusal To Assume Defense of Action Against Insured Upon Ground That Claim Upon Which Action Is Based Is Not Within Coverage of Policy,* 49 A.L.R.2d 694, 720 (1956). Under this rule, Northwestern's liability for the underlying judgment is limited to $15,000.

Peterson and Greer have argued that this general rule should no longer be followed, citing *Stockdale v. Jamison,* 416 Mich. 217, 330 N.W.2d 389, 36 A.L.R.4th 911 (1982). In *Stockdale,* the Michigan Supreme Court held that an insured could recover beyond the policy limits when an insurance company has wrongfully refused to defend, reasoning that the insurance company becomes liable for all damages "arising naturally from the breach." *Stockdale,* at 225–26. As an initial matter, we note that *Stockdale* conflicts with the majority rule discussed above. Furthermore, the *Stockdale* measure of damages violates the fundamental principle of contract damages that we mentioned at the outset of this section: an insured should be put in only as good a position as he would have occupied had the contract not been breached. *See also State Farm Mut. Auto. Ins. Co. v. Paynter,* 122 Ariz. 198, 204–05, 593 P.2d 948 (1979). Had the contract not been breached, Greer and Peterson would have been able to recover only $15,000, the policy limits, from Northwestern.[7] Accordingly, we decline to

---

[6]One exception to this rule exists, but it is inapplicable in the present case. An insurance company can be held liable beyond its policy limits if it in bad faith refuses to settle within the policy limits with the injured party. *See, e.g.,* Annot., *Duty of Liability Insurer To Settle or Compromise,* 40 A.L.R.2d 168 (1955). However, Northwestern did not refuse any settlement offers from Peterson.

[7]Northwestern's failure to defend Greer might have damaged Greer's position in another respect. Had Northwestern defended Greer, the amount of his liability to Peterson might have been reduced because the defense would have challenged Peterson's proof. In this sense, it could be argued that our remedy does not put Greer in as good a position as he would have occupied but for the refusal to defend. However, Peterson is unable to collect any damages from Greer because of the covenant she signed, see discussion below; therefore, Greer occupies even a better position than he would have occupied but for the breach.

apply the *Stockdale* rationale.

■ Finally, Northwestern contends that its liability for the judgment should be even less than its policy limits. Northwestern argues that because Peterson signed a covenant agreeing not to enforce the default judgment against Greer's property, Greer is no longer personally liable for the judgment. Thus, Northwestern contends that its liability should be limited to the consideration Greer paid for that covenant, $10.

A "slim majority" of jurisdictions permit an injured plaintiff to recover damages from the insurer despite the existence of a covenant between the plaintiff and the insured to seek relief only from the insurer. *Steil v. Florida Physicians' Ins. Reciprocal,* 448 So. 2d 589, 591 (Fla. Dist. Ct. App. 1984) (and cases cited therein). This majority rule is based on the rationale that when an insurer has refused to defend its insured, it is in no position to argue that the steps the insured took to protect himself should inure to the insurer's benefit. *Steil,* at 591. We find this reasoning to be persuasive. We also note that the Court of Appeals in this state has cited *Steil* with approval. *See Kagele v. Aetna Life & Cas. Co.,* 40 Wn. App. 194, 198–99, 698 P.2d 90, *review denied,* 103 Wn.2d 1042 (1985). We, therefore, adopt the majority rule and reject Northwestern's argument that its liability for Greer's default judgment should be only $10.

The damages are to be distributed as follows: $15,000 to Peterson and $510 to Greer. This distribution is mandated by our goal of placing the parties in as good a position as they would have occupied but for the breach. If Northwestern had fulfilled its obligation to defend Greer, he would

---

We note also that Northwestern has not argued that Greer's liability to Peterson would have been below $15,000 had it defended Greer. Indeed, the nature of Greer's accident and the extent of Peterson's injuries are evidence that the judgment would have been considerably higher than the policy limits had the case gone to trial. Therefore, we need not address the issue of how to award damages when there is evidence that the insurer's defense plausibly could have reduced the damages below the policy limits.

not have incurred the $510 in attorney expenses and Peterson would have recovered the $15,000 policy limits.

In summary, we affirm the trial court's holding that Northwestern breached its contract by refusing to defend Greer, but we reverse as to damages. Northwestern is liable for $15,000 as its share of the obligation for the judgment entered against Greer plus $510 in expenses incurred by Greer in the personal injury action.

BRACHTENBACH and DOLLIVER, JJ., and JAMES and JOHNSON, JJ. Pro Tem., concur.

CUNNINGHAM, J. Pro Tem., concurs in the result.

DORE, J. (concurring in the result)—I agree with the result which the majority reaches. The language in the insurance policy is ambiguous, and should be construed in favor of the insured. I cannot join the opinion, however, since I believe the majority makes an unjustified departure from the case law surrounding the proper method of interpreting an insurance policy.

### INTERPRETATION OF INSURANCE POLICIES

The majority states that in the event that an insurance policy is ambiguous, the court should view any extrinsic evidence to determine the meaning of the policy. Majority, at 201. This has not and should not be the law in this state. In *Vadheim v. Continental Ins. Co.,* 107 Wn.2d 836, 734 P.2d 17 (1987), a case cited by the majority, this court held

if any clause is ambiguous the court must apply a construction that is most favorable to the insured, even though the insurer may have intended another meaning.

*Vadheim,* at 841. The rule stated in *Vadheim* has long been the rule in this state, and I see no reason, nor has the majority offered any, to abandon this time–honored rule. *See, e.g., Morgan v. Prudential Ins. Co. of Am.,* 86 Wn.2d 432, 435, 545 P.2d 1193 (1976); *Glen Falls Ins. Co. v. Vietzke,* 82 Wn.2d 122, 126, 508 P.2d 608 (1973); *Thompson v. Ezzell,* 61 Wn.2d 685, 688, 379 P.2d 983 (1963); *Selective Logging Co. v. General Cas. Co. of Am.,* 49 Wn.2d

347, 351, 301 P.2d 535 (1956); *Guaranty Trust Co. v. Continental Life Ins. Co.,* 159 Wash. 683, 688, 294 P. 585 (1930); *Algoe v. Pacific Mut. Life Ins. Co.,* 91 Wash. 324, 330, 157 P. 993 (1916). If an insurance policy is ambiguous, the construction favoring the insured prevails, notwithstanding the existence of any extrinsic evidence.

Moreover, the majority's application of its new rule is flawed. In the typical contract interpretation case, a court looks to extrinsic evidence to determine the intent of the parties at the time they entered into the agreement. *Jacoby v. Grays Harbor Chair & Mfg. Co.,* 77 Wn.2d 911, 918, 468 P.2d 666 (1970). In this case, there is no doubt that when the insurance company's agent explained to the insured that there was no coverage for passengers' injuries and the insured subsequently purchased the policy, the parties had actually intended that the policy would not cover his passengers' injuries. That the insurance company later wrote to the insurance commissioner stating that this policy did provide coverage for passengers may estop the insurance company from denying coverage; it is not, however, relevant in ascertaining the intent of the parties as shown by the extrinsic evidence.

### CONCLUSION

I am deeply dismayed by the majority's attempt to rewrite time–honored principles regarding the proper construction of insurance policies. Ambiguities in these policies must be construed in favor of the insured, as the insurance company is responsible for drafting the policy, and the insured has little choice but to accept the policy language the insurance company used. I agree with the result the majority reaches, but I cannot agree with its logic or rationale.

UTTER and GOODLOE, JJ., concur with DORE, J.

Reconsideration denied November 30, 1987.